PEOPLE ex rel. WILSON v. KNOX et al.

(Supreme Court, Appellate Division, First Department.   December 8, 1899.)

1. PUBLIC OFFICERS—CIVIL SERVICE—REAPPOINTMENT—EXAMINATION CERTIFI-
   CATE—SALARY.
   Laws 1899, c. 370, providing that the civil service commission shall cer-
   tify that persons named on the pay roll have been appointed in pursuance
   of law, and that no fiscal officer shall pay salary to a person in the classified
   service unless the pay roll bears the required certificate from the civil
   service commission, applies only to officers appointed thereunder; and
   hence an officer appointed prior to the act, and continued in service by
   virtue of such former appointment, is not entitled to, and is not required
   to have, such certificate to his name on the pay roll, in order to recover
   his salary.

2. SAME—REMEDY—MANDAMUS.
   Laws 1899, c. 370, declares that no fiscal officers shall pay salary to any
   officer unless the pay roll bears a certificate that such person was appointed
   in pursuance of that act, and declares that an officer wrongfully denied such
   certificate may maintain mandamus to compel its issuance. *Held,* that
   since the act did not apply to officers appointed and holding office under
   prior acts, who are not required to have such certificate, an officer so ap-
   pointed was not entitled to mandamus to compel its issuance.

Appeal from special term, New York county.

Mandamus by the people, on the relation of Albert G. Wilson,
against Charles H. Knox and others, civil service commissioners.
From an order granting a peremptory writ, defendants appeal.  Re-
versed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY,
PATTERSON, and O'BRIEN, JJ.

Theodore Connoly, for appellants.
Julius M. Mayer, for respondent.

PATTERSON, J.   This appeal is from an order granting a writ
of mandamus to compel the issuance of a certificate under section 19,
c. 370, of the Laws of 1899.   There is a radical difference between
this case and that of Chamberlain (decided herewith) 61 N. Y. Supp.
469.   Here, the relator was originally appointed a police clerk's as-
sistant by the board of city magistrates, on the 28th of February,
1899, to fill the unexpired term of a deceased prior incumbent, which
term extended to and ended on the 30th of June, 1899.   That ap-
pointment was made pursuant to the civil service law then in force
(chapter 601, Laws 1895).   The relator was selected from the eligible
list; he standing at the head thereof, and having submitted to and
passed an appropriate, competitive civil service examination held in
October, 1897.   His original appointment, and the tenure of his of-
fice thereunder, antedated, therefore, the present civil service law
(chapter 370, Laws 1899), which did not take effect until the 19th
of April, 1899.   On the 26th of June, 1899, the board of city magis-
trates reappointed him a police clerk's assistant for a term of two
years, beginning the 1st of July, 1899, and ending on June 30, 1891.
The effect of that reappointment was to continue in office uninter-
ruptedly an incumbent who had fulfilled upon his original appoint-
ment, a few months before, every condition and requirement consti-

tuting the test of fitness and merit under constitutional provisions and the law existing on the subject at the time of that appointment. The question is whether, in such circumstances, on a reappointment, it was necessary for him, under the provisions of the act of 1899, to submit to another examination; to be again put upon the eligible list, and enter into competition with others, for his place. We find nothing in the act of 1899 demanding it. That statute provides a complete and consistent scheme, effective from its passage, for the original entry of persons into the civil service, and for their promotion, transfer, reinstatement, or reduction. There is a failure to require the re-examination of those already in the service (duly appointed under antecedent laws, rules, and regulations), for retention in their places, and also to legislate concerning the eligibility of such persons to be continued in place where short terms of office are prescribed by the laws creating the positions. The practical purpose to be attained by civil service laws is not only to secure for the public service, but to retain in that service, those who are qualified for the positions in which they are placed by the tests of the law in force at the time of their original entry into service. In the absence of something declaratory or indicative of the design, and simply because a short official term has expired by lapse of time, the law is not to be construed as requiring a renewed test of the merit and fitness of those who have already been determined to be qualified, and who are in the actual exercise of the functions of their offices. There is no reason suggested why the statute should be so construed. The object of the constitution and of the law has been attained, and their purpose fully satisfied.

If the foregoing views are correct, the relator neither needed nor was entitled to the certificate he asked for, and consequently the writ of mandamus should have been denied; for he has the ordinary action to recover his salary, whether the pay roll bears the certificate required by section 19 of the act of 1899, or not. The requirement of such a certificate is a novel feature of law, and, taking into consideration both the nineteenth section and the one preceding it, we think it quite clear that the requirement is as to prospective appointees. The nineteenth section commences by declaring that "it shall be unlawful for the comptroller or other fiscal officer of the state or any city or civil division thereof for which civil service rules have been prescribed pursuant to this act" to draw any warrant or pay any salary to any person in the classified service of the state or of any city unless the pay roll shall bear the certificate provided for in the act. The words, "for which civil service rules have been prescribed pursuant to this act," are used to indicate the conditions under which the certificate should be required. It can hardly have been intended to apply merely to fixing a date when pay rolls should in all cases be thus certified. If that had been the intent, it would have been natural to fix an earlier date,—as, for instance, "from and after the passage of this act"; for as the act, in terms, classifies the service, and as the object was to prevent evasion, why postpone the required certificate until civil service rules had been prescribed pursuant to the act? It seems plain that it was the appointment of

persons to office in violation of the rules to be prescribed pursuant to the act that was specifically to be guarded against. This is emphasized by what follows. What is the civil service commission to certify? "That persons named in such estimate, pay-roll or account have been appointed or employed or promoted in pursuance of law and of the rules made in pursuance of law." This plainly applies to appointments made, not in pursuance of prior statutes and prior rules, but in pursuance of this act and of the civil service rules to be prescribed thereunder. It is true that the phraseology of the last quotation varies from the precise expression in the opening sentence of the section; and it may be argued therefrom that it was the purpose of the lawmakers to devise a new system concerning the methods of payment of salaries, which should include evidence to be furnished to the disbursing officer that a person was entitled to salary, and that it should be applicable to all persons in the classified civil service, no matter when appointed. It may be supposed that this would result from the provisions of section 18, which require the preparation of an official roster of persons in the classified service, both in the state or any civil division thereof, except cities, and, in another connection, also in cities; and it may be sought to infer from the provisions of section 18 respecting such rosters that a certificate provided for in section 19 must be furnished in every case, and that, for the refusal to furnish it, one entitled to salary may have the remedy of mandamus given by section 19. Section 18 enacts that no person shall be appointed to or employed in any position in the classified service of the state, or of any city or civil division thereof, "for which rules have been prescribed pursuant to the provisions of this act until he has passed an examination," etc. It then provides that it shall be the duty of each appointing officer of the state or of any such civil division, except cities, to report to the state civil service commission, forthwith upon such employment, etc., the name of the appointee, the title and character of his office or employment, the date of the commencement of service by virtue thereof, and the salary or compensation, etc. The commission is required to keep in its office an official roster of the classified service of the state, and of each civil division thereof, for which rules have been prescribed pursuant to this act, except cities, and shall make certain entries upon that roster. It then proceeds to state that, "in like manner," the municipal commission of each city shall keep in its office an official roster of the classified service of such city, and shall enter thereon the name of each and every person who has been appointed to or employed in any position, promoted or reinstated in any such service, "as it may be required or deemed satisfactory" that such person was so appointed to, or employed or promoted or reinstated in, the service in conformity with the provisions of law and of the rules. It may be argued from the provisions of this eighteenth section that, inasmuch as records are required to be kept in the office of the municipal commission of each city containing evidence of the employment of those in the classified service in conformity with the provisions of law and of the rules, therefore the provisions of the nineteenth section respecting the certificate

apply to all classified incumbents of office, because the municipal commission. have in their possession the evidence upon which such certificate may be based, and have merely to refer to it. But it will be observed that both sections apply to persons appointed under rules prescribed pursuant to the provisions of the act of 1899; and that the requirement to furnish the certificate is limited in this respect would seem to follow from another sentence in the nineteenth section, namely, "Any sums paid contrary to the provisions of this section may be recovered from any officer or officers making such appointment in contravention of the provisions of law and of the rules made in pursuance of law." If these latter words, in their immediate connection, relate to past appointments, then the act of a fiscal officer in paying past appointees without a certificate would create a present liability against the original appointing officer, because of his former exercise of the appointing power,—in other words, a retroacting penalty. That seems to be the necessary logical result of any other interpretation than we have given of this nineteenth section, and such result is simply inadmissible. The legislature never intended it. What that body did, and meant to do, was to prescribe a penalty for the making of appointments thereafter in contravention of the law, and of rules to be made in pursuance of the law, it then had under consideration. The act of 1899, and the civil service rules adopted pursuant thereto, were made thereafter the sole guide both of the appointing power and of the fiscal agent; and penalties were provided for the infraction of the law by each, which were deemed adequate to restrain any attempt at disloyalty to the system. We think the expression, "in pursuance of law and of the rules made in pursuance of law," was employed with the same purport and meaning as previously used in the introductory sentence of section 19, and that it is apparent from the context that the civil service commissioners were furnished with clear guides for their action, and that they are to certify, or not, in accordance with the plain provisions of the act of 1899, and of what was supposed would be equally plain civil service rules prescribed pursuant thereto. Thus reading the act and its sections, the duties of the civil service commissioners with respect to certification are clear and simple. It was for the enforcement of such particular duties that the appointee was given the right to compel performance by mandamus.

Our conclusion is that persons lawfully appointed prior to the adoption of the civil service rules under chapter 370 of the Laws of 1899 cannot be kept out of their salaries until the pay roll which contains their names bears the certificate of the civil service commission that they were appointed "in pursuance of law and of the rules made in pursuance of law," and, on the other hand, that those illegally appointed gain nothing by a certificate that, in the judgment of the commissioners, they were appointed "in pursuance of law and of the rules made in pursuance of law."

The order should be reversed, with costs. All concur.