## FRANCES LOTHENBACH v. ARMOUR & COMPANY.[1]

November 5, 1937.

No. 31,321.

[1]Reported in 275 N. W. 690.

*Newman & Bowman,* for relator.

*G. P. Mahoney,* for respondent.

HILTON, JUSTICE.

*Certiorari* to review the order of the industrial commission denying compensation to relator for the death of her husband, Frank Lothenbach.

Prior to his death deceased was working in the hide cellar of the respondent, a packing company in South St. Paul, Minnesota. On November 18, 1935, a small pimple appeared on his upper lip near the left nostril. About this time he was also suffering from a common cold. On November 20 the upper lip began to swell. Within two days this swelling had greatly increased, involving the lip, cheek, neck, and jaw on the left side of the face. Deceased remained in bed and a physician was called. He found that deceased had what is commonly known as a carbuncle on his upper lip near the left nostril. This ultimately led to a condition of general septicemia or blood poisoning, which gradually weakened deceased until November 28, when pneumonia developed and death resulted within a few hours.

The referee made the following finding of fact, which was adopted by the commission:

"That on November 20, 1935, Frank Lothenbach was afflicted with an infectious condition resulting in death November 29, 1935, and said infectious condition and death was not caused or aggravated by an accidental injury arising out of and in the course of his employment."

It is relator's claim that this finding is not supported by the evidence. There is testimony tending to show that deceased accidentally scratched the top or head off the pimple on his lip while he was at work, causing the opening through which the infection en-

tered his system. On the other hand, there is evidence tending to show that there was no noticeable abrasion in the skin at the time the infection set in. Some witnesses having an opportunity to observe stated that they did not notice such an abrasion. The doctor who treated the deceased testified that the organism or germ causing the infection could enter the body through a break in the skin so small as to be practically invisible to the unaided eye. He testified that there was no abrasion in the skin when he first saw the patient, but also added that this would not necessarily mean that there had not been an abrasion, because the swelling and other characteristics of the infection would tend to hide the evidence of any break in the skin.

There was evidence on behalf of the relator that the conditions under which deceased worked and the hides which he handled were unclean and a very possible source of infection; that they caused his clothes to become dirty and the backs of his hands to become cracked and infected; and that deceased, suffering from a cold and while at work, wiped his nose with his sleeve or hands and thus introduced into his system, from his sleeve or hands, the germs which caused the infection. Again, however, there is medical testimony that the infection could come from other outside sources, such as from dust, or, of more importance in this case, from the secretions of the cold with which the deceased was suffering. One of the medical witnesses testifying for the relator stated that the streptococci and staphylococci which caused such infections are present in a cold.

In the death certificate and a report he made out and signed for an insurance company, the doctor who treated deceased stated that death was not caused by an accident or condition arising out of or related to the employment of Lothenbach. He testified on behalf of the relator and admitted that those statements were his opinion at the time he made them. He stated that he had since changed his opinion and explained that the documents were signed in a hurry without giving their contents much thought and that he later felt that the infection *probably* was related to deceased's employ-

ment. His testimony, of course, conflicted with his statements made in the instruments mentioned.

The findings of the commission must remain undisturbed if there is evidence reasonably tending to sustain them or unless they are manifestly and clearly contrary to the evidence. Campbell v. Nelson, 175 Minn. 51, 220 N. W. 401. The evidence set out obviously presented a fact question as to the cause of Lothenbach's condition, for the determination of the referee in the first instance. His finding thereon has been adopted by the commission, and there is evidence reasonably tending to sustain it. The rule has been otherwise stated as follows:

"A finding upon a question of fact cannot be disturbed unless consideration of the evidence and the inferences permissible therefrom clearly require reasonable minds to adopt a conclusion contrary to the one at which the commission arrived." Gorman v. Grinnell Co. Inc., 200 Minn. 122, 273 N. W. 694.

Under the circumstances presented herein, we are not warranted in disturbing the finding complained of.

Affirmed.

