DANIEL JEROME v. H. L. BURNS.[1]

April 14, 1938.

No. 31,555.

[1]Reported in 279 N. W. 237.

*M. H. Greenberg,* for appellant.

*Philip M. Stone,* for respondent.

JULIUS J. OLSON, JUSTICE.

Eveleth is a city of the fourth class and operates under a home rule charter. On January 2, 1934, Daniel Jerome, to whom we shall hereafter refer as plaintiff, was appointed city clerk for a two-year term and his salary fixed at $185 per month. He was also appointed commissioner of registration, but with that appointment nothing was said in respect of salary. Shortly thereafter he complained about the inadequacy of his salary and asked to be allowed $50 per month as compensation for the performance of his duties as commissioner. During the first six months of his term he was paid at the rate of salary originally fixed. In July of that year and to the end of his term he was paid at the rate of $210 per month. Several informal discussions were had between plaintiff and the members of the council about paying him additional compensation as commissioner, but nothing definite came of it. Plaintiff testified that the reason the council failed to act was that the members thereof were influenced by "political expediency," and this "seemed to

be the main reason" why no salary for this particular service was granted. At any rate, in this fashion the thing went along until December 10, 1935, when, at the meeting of the council, a motion was adopted that his salary "as commissioner of registration be fixed at $50 per month, effective January 1, 1934, and that same be allowed in the amount of $1,200." It is interesting to note that at the same meeting similar motions were passed with respect to two other clerks of the city whose terms had expired prior to plaintiff's. The same allowance was made also to them.

Under the charter of Eveleth provision is made for the right of any taxpayer of the city to appeal to the district court from the allowance of claims by the council. Mr. Burns as such taxpayer took this appeal. After trial had, findings were made disallowing plaintiff's claim. His motion for amended findings and conclusions or for new trial was denied. Judgment was thereupon entered, and he appeals.

In addition to the findings mentioned, the court also found that during the two-year period here involved the city was upon a cash basis in operating its city affairs. The applicable charter provision is that tax money levied and to be raised in any one year for expenditures during the succeeding year shall not be used for any other purpose. In neither of the years 1934 or 1935 was there any money available in the salary fund to pay the additional salary voted plaintiff in December, 1935.

By 3 Mason Minn. St. 1936 Supp. § 393-1, it is provided that "the city clerk in any such city shall be ex-officio commissioners of registration, and shall receive such additional salary as commissioners as the council shall fix, not however exceeding $600, per year, payable in equal monthly installments." It is plaintiff's claim that under this statute, concededly operative in Eveleth, it became the duty of the council to fix a salary and to pay it; that the mere fact that the council neglected so to do should not deprive him of a right to recover in the instant case; that in view of repeated promises made by members of the council, although informal, the appropriation of $50 per month was justified; that the action of the council was but a recognition of a genuine obligation of the

city, and that the court was in error in overriding the council's action.

The taxpayer asserted, and the trial court sustained this view, that when the council on January 2, 1934, fixed his salary as city clerk at $185 per month the amount so fixed covered the salary of both offices. It is pointed out that long prior thereto, May 17, 1929, the council had adopted a resolution wherein it accepted the provisions of the legislative act creating the office of commissioner of registration in villages and cities of the class of Eveleth. (2 Mason Minn. St. 1927, §§ 393-1 to 393-14, as amended.) The resolution adopting the provision of that act also provided that the city clerk should be appointed commissioner of registration "and that he forthwith make the necessary provisions for holding such registration duties and that he secure the necessary supplies and materials for permanently registering the qualified voters of the city *without additional compensation.*" (Italics supplied.) It also appears that when plaintiff accepted these offices he was fully informed respecting the existence of this resolution, and that it has never been altered since its adoption. As a matter of fact the question of extra pay for the commissioner did not arise until February, 1934, when a previous clerk presented his claim for such compensation. Apparently nothing was done respecting any such claim until the December, 1935, meeting. It may not be inappropriate to remark that when this meeting took place and these claims were allowed the then personnel of the council was soon to be changed because of a recently held election.

As might be expected, counsel have reached opposite conclusions in their interpretation of the word "shall" as used in the cited section (§ 393-1). For plaintiff it is urged that the word is mandatory, not permissive or directory. He quotes the language, the commissioner *"shall* receive such additional salary," as indicative of requirement. If such were the intent the simple way to express such thought would have been to say, "the council shall fix a salary." Instead, the language is, the commissioner "shall *receive* such additional salary * * * as the council shall fix." The "additional salary" would necessarily depend upon what the council thought

was reasonable and proper under the circumstances and requirements of the municipality they were chosen to govern. The work of a city clerk might not in many cases require full-time employment. The duties of the Eveleth commissioner had been performed in the past "without additional compensation." It was so determined here in the very order accepting the provisions of the legislative act. Clearly the then council thought the clerk's salary was adequate to cover the extra service which ex-officio he was required to perform as commissioner.

It is perfectly apparent that the council in adopting the resolution fixing plaintiff's salary almost at the end of his term and providing for a two-year payment in a lump sum was not acting in compliance with the statute nor in conformity with its prior practice. Plaintiff accepted his checks from month to month, knowing the services rendered as commissioner were not to be compensated for as long as the former resolution was in effect. As we have seen, in February, 1934, a former clerk sought extra compensation for the same kind of service. That was not acted upon until the same day and at the same meeting as was plaintiff's claim. At that time two former clerks who had rendered service of this type were given the same generous treatment as plaintiff. As to the claims of the two prior clerks, obviously pure gratuities were granted. The implication is irresistible that the same kind of gratuity was intended for plaintiff.

When these claims were allowed and the money appropriated the salary fund both as to the years 1934 and 1935 had been exhausted. If this kind of official action were to be approved, logrolling to grant public money to favored ones would result. Such practice of fixing official salary might easily lead to official graft. The charter of the city provides (§ 49):

"The compensation of all city officers * * * shall be by salary, to be fixed by the council. * * * No officer or employee shall be allowed any fee, rewards or compensation, other than the salary or compensation fixed by the council, but all fees received by him

in connection with his official duties shall be paid into the city treasury."

The result of such conduct as here practiced by the council would lead to direct conflict with the spirit of the cash basis law as set forth in § 79-A of the amended charter, which provides:

"From and after the commencement of the 1934 fiscal year, the city of Eveleth shall be on a cash basis  *  *  *  and the tax levy of 1933  *  *  *  shall be considered as a levy for the purpose of conducting the affairs of the City during the year 1934 and shall be spent for no other purpose and the subsequent tax levies for the subsequent years shall be similarly treated for the purpose of conducting the affairs of the city during the fiscal year succeeding such levy  *  *  *."

We therefore conclude:

(1) That the use of the word "shall" in the cited section of the statute is not decisive as to whether the provision thereof is directory or mandatory. That word frequently has been construed as meaning "may." This is particularly true where, as here, the statute prospectively affects government action. Reading the entire section as a whole leaves us in no doubt that the word "shall" is permissive or directory rather than mandatory. Our cases are cited in 6 Dunnell, Minn. Dig. (2 ed.) § 8979, under notes 89 and 91. See Railroad Co. v. Hecht, 95 U. S. 168, 24 L. ed. 423; West Wisconsin Ry. Co. v. Foley, 94 U. S. 100, 103, 24 L. ed. 71, 72.

(2) That "Where an officer performs duties imposed by law he is entitled to the compensation therefor fixed by law and no other. He is not entitled to extra compensation for services performed in the line of his official duty. The fact that the salary or compensation may be recognized as inadequate remuneration for the services exacted and actually performed does not change the rule. And the principle is the same although his duties are greatly increased. Courts everywhere recognize the necessity of protecting the public funds, and hence they will usually enforce the rule against permitting extra compensation either directly or indirectly, with ap-

propriate strictness."   2 McQuillin, Municipal Corporations (2 ed.) p. 251, § 544.

(3) That the evidence amply supports the court's findings, hence that the judgment should be and it is affirmed.

MR. JUSTICE STONE took no part in the consideration or decision of this case.

