## JOSEPH PRATTS v. CITY OF DULUTH.[1]

December 29, 1939.

No. 32,270.

[1] Reported in 289 N. W. 788.

*John F. Ball,* for appellant.

*Harry E. Weinberg,* City Attorney, and *Roland J. Henning,* Assistant City Attorney, for respondent.

LORING, JUSTICE.

Appeal by plaintiff from judgment entered upon findings and conclusions by the court. Plaintiff from February 1, 1932, to December 31, 1932, held the office of sanitary inspector of the defendant city of Duluth, a duly organized municipal corporation existing under a home rule charter. His compensation was fixed by the council pursuant to authority in the city charter. During the year 1932 the city of Duluth was suffering from economic depression brought on by tax delinquencies and the like. In order to make up deficits in the budget and to foster relief, the council passed a resolution accepting a five per cent "voluntary contribution" from all officers and employes salaried at $90 or more per month. The percentage was later increased to ten per cent. Plaintiff brings suit for the amount of his own salary thus "voluntarily contributed" and for amounts similarly contributed by other employes who have duly assigned their claims to him. Plaintiff and his assignors signed statements authorizing "the proper City Officers to deduct a Voluntary Contribution from my wages for a period of six months from February 1st, 1932;" and acknowledging "the dire necessity that exists for employment and the conscientious efforts being put forth by the City Council to meet this serious question and at the same time to attempt to solve an overdraft of several thousands of dollars in the City's 1931 Budget without making a straight salary cut in the City's pay rolls or decreasing working forces at a time when it is impossible to obtain any form of employment * * *." They also signed the pay roll acknowledging assent to the deductions each payday.

Plaintiff's appeal asserts that the agreements to contribute were void, because contrary to public policy, involuntary, and given for purposes that were never carried out; that there is no estoppel, because estoppel was not pleaded; that there can be no

estoppel of an agreement contrary to public policy; and that the facts do not establish estoppel. The trial court found as facts that the contributions were voluntary, that they were devoted to the purposes for which contributed, and that plaintiff and his assignors were estopped to make these claims by their conduct herein referred to. These findings are adequately supported by the evidence and are therefore final.

In support of the contention that the contributions were contrary to public policy, plaintiff cites notes in 70 A. L. R. 973, and 118 A. L. R. 1458, wherein are listed the majority and minority views on the subject. In discussing the applicability of public policy rules, that annotator in vol. 118 says:

· "Where by law * * * a party is entitled to a fixed salary or compensation, cases involving attempted reductions by *other means than through the body fixing it are included.* The distinction between cases involving a fixed legal compensation and those where the employing body is empowered to determine it was brought out in Riley v. New York (1884) 96 N. Y. 331."

The New York case is quoted in some length; in part, as follows [118 A. L. R. 1459]:

"When, however, the persons authorized to effect the employment are also empowered to fix the salary or compensation of the employee, there is no foundation for the application of the doctrine * * *. In this case it was optional with the fire commissioners to change the compensation of any of their employees at any time, but in case they did so, it was, of course, within the power of the employee to continue to work at the changed rate or not, but in case he did so he could recover compensation for his services only at the substituted rate."

In the instant case all the powers of the city were to be exercised by, through, and under the city council. The city council had the authority to fix the salaries of the plaintiff and all his assignors except the commissioner, Gustafson, whose salary was fixed by charter. Under our disposition of the case, that factor

is not controlling. The doctrine of estoppel applies in his case notwithstanding his salary was fixed by charter and could not be fixed by the council.

Also cited by appellant as authority for his point of view is 2 McQuillin, Municipal Corporations (2 Rev. ed.) §§ 534, 535, 542. McQuillin's statements in § 542, however, serve to sustain the city's, rather than appellant's, contentions:

"Moreover, the acceptance of a less sum, without objection, and in full satisfaction of services rendered, has often been said to estop an officer or employee from claiming more. Such an action is said to be equivalent to an executed agreement to receive a reduced salary. So, it has frequently been held that the agreement of an officer or employee, in time of economic depression or other emergency, to accept a deduction, or to donate or contribute part of his salary to the city, is valid, and is not against public policy, and precludes any recovery of the amount so deducted or contributed. This has been said to be true notwithstanding a statute prohibiting reduction of salaries during term of office."

That this is the rule in Minnesota is shown by Nelson v. City of Eveleth, 197 Minn. 394, 267 N. W. 261, 263. Pursuant to a retrenchment policy similar to that in the instant case, the council had ordered that the firemen put in three-quarter time and receive three-quarter pay. Plaintiff maintained that he had put in full time but had received only three-quarter pay. He too signed the pay roll each payday. The court held him estopped to recover the 25 per cent amounts so contributed. The court, citing Love v. Mayor, 40 N. J. L. 456, said [197 Minn. 399]:

"There, as here, the reduction in the salary was made by the authority having the power to fix salaries, and the court said that the employe's continuance in the service 'was an assent to the reduction of his salary, and his receipt of monthly warrants and payments during the whole term is an estoppel against any error in the mode of reduction, or the amount fixed by the board of finance and taxation.'"

See also Putnam v. City of St. Paul, 75 Minn. 514, 78 N. W. 90; Jerome v. Burns, 202 Minn. 485, 279 N. W. 237; and Doyle v. City of St. Paul, 206 Minn. 542, 289 N. W. 785, filed herewith.

Upon authority of the Nelson case, 197 Minn. 394, 267 N. W. 261, it seems clear that the agreement to receive a cut in salary upon the suggestion of the council is not an agreement contrary to public policy, and that the facts that the employes remained in the employment, accepted the reduced salary, and signed the pay roll each time constitute an estoppel. All of these facts were sufficiently pleaded and proved.

The point is raised that the city council had authority to fix salaries only by ordinance, whereas the action taken here was by resolution. A similar objection was raised against salary cuts in Altenberg v. City of Superior, 228 Wis. 272, 280 N. W. 342, 118 A. L. R. 1452. There police officers suffered salary reductions by action of the council without a previous recommendation thereof by the board of police commissioners as required by law. The Wisconsin court held, however, that accepting the lesser amounts and remaining in the employment amounted to acquiescence and assent thereto, and that the officers and employes were estopped from claiming amounts so contributed.

Judgment affirmed.